UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Hon. Robert B. Kugler, U.S.D.J. |
| | : | |
| v. | : | |
| | : | Crim. No. 19-191 (RBK) |
| WILLIAM HICKMAN, *et al.* | : | |

---

**BRIEF OF THE UNITED STATES IN OPPOSITION TO
DEFENDANTS' PRETRIAL MOTIONS AND IN SUPPORT OF
ITS MOTION FOR RECIPROCAL DISCOVERY**

---

CRAIG CARPENITO
United States Attorney
401 Market Street
Camden, New Jersey 08101
(856) 757-5026

On the Memorandum:
R. David Walk, Jr.
Christina O. Hud
Assistant United States Attorneys

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................ i

PRELIMINARY STATEMENT ....................................................................................1

ARGUMENT ...............................................................................................................2

I.    DEFENDANTS' MOTIONS TO DISMISS SHOULD BE DENIED. ..............................2

    A.    Counts 1 and 28 Each Allege a Single Conspiracy and Should Not Be
Dismissed. ..............................................................................................................2

        1.    Whether there were single or multiple conspiracies is a question of fact for
the jury. .................................................................................................. 3

        2.    Count 1 alleges a single conspiracy and is not duplicitous. ....................... 4

        3.    Count 28 alleges a single conspiracy. .................................................. 8

    B.    Counts 37, 38, 49, and 50 Properly Allege an Offense Based on Alternative
Theories
of Liability and Should Not Be Dismissed. ............................................................9

    C.    The Court Should Reject the Arguments that the Health Care Fraud Counts
Must Be Dismissed Based on the Claim That the Indictment Does Not Prove
or Define Medical Necessity. ...............................................................................10

    D.    The Health Care Fraud Counts Are Not Unconstitutionally Vague and Do
Not Fail to Allege Material Misrepresentations. ....................................................12

    E.    The Indictment Sufficiently Alleges Knowledge of the Defendants. ...................15

II.   DEFENDANTS' MOTIONS TO SEVER SHOULD BE DENIED. ...............................16

    A.    Judicial Economy and Prejudice to the Government Weigh Against
Severance. ............................................................................................................17

    B.    There is a Strong Preference for Jointly Trying Co-Defendants in Criminal
Conspiracies. .......................................................................................................18

    C.    The Defendants' Spillover Arguments Are Overstated ........................................20

III.  DEFENDANTS' MOTION FOR A BILL OF PARTICULARS SHOULD BE
DENIED. ..................................................................................................................22

    A.    A Bill of Particulars is Unwarranted Because the Indictment and Discovery
Give the Defendants Ample Information. ..............................................................22

    B.    Defendants' Individual Requests ........................................................................26

        1.    Particular false statements and how and why they are false ................................ 26

        2.    Identity of unindicted co-conspirators and others. ................................... 27

      3.   Definitions and explanations of terms used in the Indictment.............................. 28

      4.   Other evidentiary details ...................................................................................... 28

IV. DEFENDANT PUGH'S REQUEST FOR THE GRAND JURY INSTRUCTIONS
     ON AIDING AND ABETTING SHOULD BE DENIED.................................................29

V.  THIS CASE SHOULD NOT BE TRANSFERRED TO THE NEWARK VICINAGE. ..30

VI. THE DEFENDANTS SHOULD BE ORDERED TO PRODUCE RECIPROCAL
     DISCOVERY AND PRIOR DEFENSE WITNESS STATEMENTS, INCLUDING
     ANY PRIVATE INVESTIGATOR REPORTS. .............................................................33

CONCLUSION....................................................................................................................34

# TABLE OF AUTHORITIES

**CASES**                                                                    **PAGE(S)**

*Blumenthal v. United States,*
  332 U.S. 539 (1947) ........................................................................3, 7

*Burnham v. United States,*
  297 F.2d 523 (1st Cir. 1961) ...............................................................10

*Dobbert v. Florida,*
  432 U.S. 282 (1977) ..........................................................................31

*Douglas Oil Co. v. Petrol Stops N.W.,*
  441 U.S. 211 (1979) ..........................................................................30

*Hamling v. United States,*
  418 U.S. 87 (1974) ............................................................................30

*Kotteakos v. United States,*
  328 U.S. 750 (1946) ........................................................................2, 3

*Pittsburgh Plate Glass Co. v. United States,*
  360 U.S. 395 (1959) ..........................................................................29

*Riley v. Taylor,*
  277 F.3d 261 (3d Cir. 2001) ...............................................................31

*Skilling v. United States,*
  561 U.S. 358 (2010) ......................................................................31, 32

*United States v. Addonizio,*
  451 F.2d 49 (3d Cir. 1971) .................................................................23

*United States v. Advantage Med. Transp., Inc.,*
  751 F. App'x 258 (3d Cir. 2018) ...........................................................2

*United States v. Am. Inv. of Pittsburgh, Inc.,*
  879 F.2d 1087 (3d Cir. 1989) .............................................................10

*United States v. Armocida,*
  515 F.2d 49 (3d Cir. 1975) .................................................................29

*United States v. Arshad,*
  325 F. Supp. 3d 695 (E.D. La. 2018) ...................................................14

*United States v. Atwell,*
  2015 WL 2092687 (D.N.J. May 5, 2015) .............................................27

*United States v. Bellomo,*
  263 F. Supp. 2d 561 (E.D.N.Y. 2003) .................................................23

*United States v. Bergrin,*
  650 F.3d 257 (3d Cir. 2011) ............................................................2, 15

*United States v. Bobb,*
  471 F.3d 491 (3d Cir. 2006) ............................................................3, 7

i

*United States v. Boyd*,
    595 F.2d 120 (3d Cir. 1978)................................................................5, 7

*United States v. Bryan*,
    483 F.2d 88 (3d Cir. 1973)................................................................9, 10

*United States v. Campa*,
    459 F.3d 1121 (11th Cir. 2006)..............................................................31

*United States v. Campbell*,
    256 F. App'x 546 (3d Cir. 2007)..............................................................9

*United States v. Capener*,
    2006 WL 8429828 (D. Nev. Sept. 22, 2006) .........................................14, 15

*United States v. Caruso*,
    948 F. Supp. 382 (D.N.J. 1996) ................................................................24

*United States v. Chalhoub*,
    2018 WL 9802145 (E.D. Ky. Feb. 16, 2018).........................................10, 13

*United States v. Chandler*,
    388 F.3d 796 (11th Cir. 2004)....................................................................3

*United States v. Chartock*,
    283 F. App'x 948 (3d Cir. 2008)..............................................................12

*United States v. Coffey*,
    361 F. Supp. 2d 102 (E.D.N.Y. 2005)......................................................28

*United States v. Convalescent Transp., Inc.*,
    2005 WL 8170040 n.2 (E.D.N.C. Sept. 8  2005) .....................................10

*United States v. Cook*,
    2018 WL 1744682 (M.D. Pa. April 11, 2018) .........................................27

*United States v. Cooper*,
    283 F. Supp. 2d 1215 (D. Kan. 2003)...................................................15, 16

*United States v. Crabb*,
    2008 WL 794871 (M.D. Pa. March 24, 2008) .........................................25

*United States v. De Peri*,
    778 F.2d 963 (3d Cir. 1985)................................................................31, 32

*United States v. Delle Donna*,
    552 F. Supp. 2d 475 (D.N.J. 2008) .................................................26, 28, 29

*United States v. Denison*,
    508 F. Supp. 659 (M.D. La. 1981) ............................................................13

*United States v. Depiro*,
    2013 WL 663303 (D.N.J. Feb. 20, 2013)..............................................27, 29

*United States v. Diehl-Armstrong*,
    739 F. Supp. 2d 786 (W.D. Pa. 2010) ...................................................31, 32

*United States v. DiPasquale*,
  740 F.2d 1282 (3d Cir.1984) ..................................................................17

*United States v. Donsky*,
  825 F.2d 746 (3d Cir. 1987) ....................................................................3

*United States v. Eufrasio*,
  935 F.2d 553 (3d Cir. 1991) ......................................................17, 21, 23

*United States v. Eury*,
  2015 WL 1861807 (M.D.N.C. Apr. 23, 2015) ........................................4

*United States v. Forde*,
  740 F. Supp. 2d 406 (S.D.N.Y. 2010) ...................................................30

*United States v. Franklin-El*,
  554 F.3d 903 (10th Cir. 2009) ...............................................................14

*United States v. Freeman*,
  763 F.3d 322 (3d Cir. 2014) ....................................................................3

*United States v. Fumo*,
  2008 WL 109667 (E.D. Pa. Jan. 9, 2008) ..................................18, 19, 20

*United States v. Georgiou*,
  2009 WL 4641719 (E.D. Pa. Dec. 7, 2009) .............................................3

*United States v. Greenidge*,
  495 F.3d 85 (3d Cir. 2007) ........................................................6, 7, 8, 9

*United States v. Huet*,
  665 F.3d 588 (3d Cir. 2012) ..........................................................2, 4, 14

*United States v. Jackson*,
  926 F. Supp. 2d 691 (E.D.N.C. 2013) .....................................................4

*United States v. Kelly*,
  892 F.2d 255 (3d Cir. 1989) .................................................................4, 6

*United States v. Kemp*,
  2004 WL 2757867 (E.D. Pa. Dec. 2, 2004) ...........................................24

*United States v. Kemp*,
  500 F.3d 257 (3d Cir. 2007) .........................................................3, 7, 12

*United States v. Kenny*,
  462 F.2d 1205 (3d Cir. 1972) ..........................................................23, 29

*United States v. Knight*,
  2013 WL 3367259 (E.D. Pa. July 3, 2013) .......................................27, 28

*United States v. Lacerda*,
  2013 WL 3177814 (D.N.J. June 29, 2013) ...........17, 18, 19, 20, 24, 26, 28

*United States v. Lacerda*,
  2020 WL 2121456 (3d Cir. May 5, 2020) ........................................17, 19

*United States v. Leadbeater*,
  2015 WL 567025 (D.N.J. Feb. 10, 2015) ..................................................................3

*United States v. Mariani*,
  7 F. Supp. 2d 556 (M.D. Pa. 1998) .......................................................................27

*United States v. Matusiewicz*,
  2014 WL 2446064 (D. Del. May 29, 2014) ........................................................ 32, 33

*United States v. McGill*,
  2016 WL 8716240 (E.D. Pa. May 13, 2016) ......................................................14, 16

*United States v. McGlory*,
  968 F.2d 309 (3d Cir. 1992) .................................................................................21

*United States v. McLean*,
  715 F.3d 129 (4th Cir. 2013) ...............................................................................13

*United States v. Med 1st*,
  2017 WL 4848823 (W.D. Ky. Oct. 26, 2017) ...................................................10, 13

*United States v. Moore*,
  423 U.S. 122 (1975) .............................................................................................11

*United States v. Moyer*,
  674 F.3d 192 (3d Cir. 2012) ............................................................................24, 26

*United States v. Munoz-Franco*,
  986 F. Supp. 70 (D.P.R. 1997) ...............................................................................4

*United States v. Naegele*,
  474 F. Supp. 2d 9 (D.D.C. 2007) ........................................................................30

*United States v. Onque*,
  685 F. App'x 189 (3d Cir. 2016) .........................................................................6, 7

*United States v. Padilla*,
  982 F.2d 110 (3d Cir. 1992) ...............................................................................6, 7

*United States v. Perez*,
  280 F.3d 318 (3d Cir. 2002) ..................................................................................3

*United States v. Pike Indus., Inc.*,
  575 F. Supp. 885 (D. Vt. 1983) ...........................................................................30

*United States v. Quintero*,
  38 F.3d 1317 (3d Cir. 1994) ..................................................................................7

*United States v. Rosa*,
  891 F.2d 1063 (3d Cir. 1989) ..........................................................................23, 25

*United States v. Sampson*,
  2012 WL 214707 (M.D. Pa. Jan. 24, 2012) ........................................................28

*United States v. Sandini*,
  888 F.2d 300 (3d Cir. 1989) ............................................................................17, 18

*United States v. Savage*,
  2012 WL 2376680 (E.D. Pa. June 25, 2012) ....................................31, 32

*United States v. Scarfo*,
  2012 WL 4120504 (D.N.J. Sept. 12, 2012)..........................18, 20, 21

*United States v. Simpson*,
  228 F.3d 1294 (11th Cir. 2000)............................................14

*United States v. Singhai*,
  876 F. Supp. 2d 82 (D.D.C. 2012) ..........................................30

*United States v. Smith*,
  776 F.2d 1104 (3d Cir. 1985)..........................................23, 25

*United States v. Smith*,
  789 F.2d 196 (3d Cir. 1986)...............................................7

*United States v. Smukler*,
  330 F. Supp. 3d 1050 (E.D. Pa. 2018) ....................................27

*United States v. Sourlis*,
  963 F. Supp. 568 (D.N.J. 1996) ......................................4, 8, 26

*United States v. Stevenson*,
  832 F.3d 412 (3d Cir. 2016)...............................................2

*United States v. Trie*,
  23 F. Supp. 2d 55 (D.D.C. 1998) ..........................................30

*United States v. Urban*,
  404 F.3d 754 (3d Cir. 2005)..........................................21, 22, 24

*United States v. Voigt*,
  89 F.3d 1050 (3d Cir. 1996)...............................................18

*United States v. Wabo*,
  290 F. Supp. 2d 486 (D.N.J. 2003) ........................................25

*United States v. Weiner*,
  2009 WL 1911286 (E.D. Pa. July 1, 2009) ..................................3

*United States v. Whited*,
  311 F.3d 259 (3d Cir. 2002)...............................................13

*United States v. Willis*,
  844 F.3d 155 (3d Cir. 2016)...............................................2

*United States v. Zafiro*,
  506 U.S. 534 (1993) ..................................................17, 22

*United States v. Zolp*,
  659 F. Supp. 692 (D.N.J. 1987) ......................................23, 25

v

**STATUTES**

18 U.S.C. § 2 ................................................................................................................9

18 U.S.C. § 1957 ..........................................................................................................9

**RULES**

Fed. R. Crim. P. 6(e) ..................................................................................................29

Fed. R. Crim. P. 7(f) ..................................................................................................29

Fed. R. Crim. P. 14(a) ................................................................................................17

Fed. R. Crim. P. 16(b) ................................................................................................33

Fed. R. Crim. P. 21 .....................................................................................................30

Fed. R. Crim. P. 21(a) ................................................................................................31

Fed. R. Crim. P. 21(b) ................................................................................................31

## PRELIMINARY STATEMENT

Defendants move to dismiss all or part of the Indictment and for other relief on many different grounds.  Defendants John Sher and Thomas Sher move to dismiss the Indictment because they believe that they did not commit any crimes and because, they speculate, the Government did not prove medical necessity to the grand jury.  They also seek to bar Government expert testimony at trial.  Defendant Thomas Schallus moves to dismiss Count 1, which alleges a single conspiracy of all defendants, based on his claim that it really alleges multiple conspiracies.  Schallus also seeks to have his case severed from that of his codefendants and to receive a bill of particulars.  Defendant Brian Pugh moves to dismiss Counts 1 and 28 on the ground that they really allege multiple conspiracies; Counts 9 through 13 because they do not define medical necessity, supposedly do not allege a material misrepresentation, and are unconstitutionally vague; and Counts 37, 38, 49, and 50 because he reads them to allege that he aided and abetted himself.  Pugh also requests a bill of particulars, severance, production of grand jury transcripts, and transfer of this case to the Newark Vicinage based on pretrial publicity.  In addition to their own motions, defendants John and Thomas Sher move for leave to join in the pretrial motions of other defendants.  Schallus moves to join in Pugh's motions to dismiss Counts 1 and 9-13, for a bill of particulars, and for change of venue, as well as to join in the Shers' motion to bar Government experts at trial.  Defendant Christopher Broccoli did not file his own motion, but moves to join in the other defendants' motions to the extent they apply to him.  As demonstrated below, all of the defendants' motions have no merit and should be denied.

Additionally, the Government is entitled to reciprocal discovery and statements of potential defense witnesses.  The Government thus requests that the defendants produce reciprocal discovery immediately and any such statements of potential witnesses at the time of *Jencks* disclosures.

1

## ARGUMENT

**I.      DEFENDANTS' MOTIONS TO DISMISS SHOULD BE DENIED.**

Defendants move to dismiss the Indictment as legally insufficient.  "[A]n indictment is facially sufficient if it (1) contains the elements of the offense intended to be charged, (2) sufficiently apprises the defendant of what he must be prepared to meet, and (3) allows the defendant to show with accuracy to what extent he may plead a former acquittal or conviction in the event of a subsequent prosecution."  *United States v. Advantage Med. Transp., Inc.*, 751 F. App'x 258, 262 (3d Cir. 2018) (citing *United States v. Stevenson*, 832 F.3d 412, 423 (3d Cir. 2016); *United States v. Huet*, 665 F.3d 588, 595 (3d Cir. 2012)).  It is well settled that "no greater specificity than the statutory language is required so long as there is sufficient factual orientation to permit a defendant to prepare his defense and invoke double jeopardy."  *Id.* at 595.  An indictment is sufficient "unless it is so defective that it does not, by any reasonable construction, charge an offense."  *United States v. Willis*, 844 F.3d 155, 162 (3d Cir. 2016).  Review of a motion to dismiss an indictment "is a narrow, limited analysis geared only towards ensuring that legally deficient charges do not go to a jury," and the Court should "limit its inquiry to the four corners of the Indictment" and not consider extrinsic evidence "to discern the Government's theory of the case." *United States v. Bergrin*, 650 F.3d 257, 268 (3d Cir. 2011); *Huet*, 665 F.3d at 593.

**A.      Counts 1 and 28 Each Allege a Single Conspiracy and Should Not Be Dismissed.**

Defendants Pugh and Schallus contend that Count 1 alleges multiple conspiracies and should be dismissed based on *Kotteakos v. United States*, 328 U.S. 750 (1946), and its progeny. Pugh makes the same contention about Count 28.  But the law is clear that whether there are multiple conspiracies is an issue of fact for the trial jury, and district courts in this circuit routinely reject such claims in motions to dismiss because they are premature.  And a review of all of the

allegations in Counts 1 and 28, instead of the individual facts selected by the defendants, shows that each count does allege a single conspiracy.

###     1.    Whether there were single or multiple conspiracies is a question of fact for the jury.

In *Kotteakos*, the government admitted that it charged a single conspiracy in the indictment but proved several separate and distinct conspiracies at trial.  328 U.S. at 755.  After reviewing the evidence presented at trial, the Supreme Court held that proving multiple conspiracies when one was charged constituted an unlawful variance that prejudiced the defendants.  *Id.* at 775-76.  Subsequent courts have reviewed trial records to determine if the evidence presented at trial showed only multiple conspiracies and, if it did, whether that variance from the indictment prejudiced the defendants.  *See, e.g., Blumenthal v. United States*, 332 U.S. 539 (1947); *United States v. Kemp*, 500 F.3d 257, 287-92 (3d Cir. 2007); *United States v. Chandler*, 388 F.3d 796 (11th Cir. 2004).

The Third Circuit has stated repeatedly that "[t]he issue of whether a single conspiracy or multiple conspiracies exist is a fact question to be decided by a jury."  *United States v. Perez*, 280 F.3d 318, 345 (3d Cir. 2002); *accord United States v. Freeman*, 763 F.3d 322, 343 (3d Cir. 2014); *United States v. Bobb*, 471 F.3d 491, 494 (3d Cir. 2006).  Because the existence of multiple conspiracies is a fact question for trial, district courts in this circuit routinely deny or reject as premature motions to dismiss based on multiple conspiracy arguments.  *See, e.g., United States v. Leadbeater*, 2015 WL 567025, at *5 (D.N.J. Feb. 10, 2015) (Simandle, C.J.); *United States v. Georgiou,* 2009 WL 4641719, at *5 (E.D. Pa. Dec. 7, 2009); *United States v. Weiner*, 2009 WL 1911286, at *5 (E.D. Pa. July 1, 2009).[1]  Defendants Pugh and Schallus have failed to cite a single

---

[1] Indeed, when a judge in this district dismissed a conspiracy count based on *Kotteakos* without letting the count go to the jury—after the Government's opening —the Third Circuit reversed and remanded the case for trial.  *United States v. Donsky*, 825 F.2d 746, 753-54 (3d Cir. 1987).

case in this circuit in which a district court granted a motion to dismiss based on a claim that the indictment alleged multiple conspiracies.[2]  The principle that multiple conspiracy claims should be decided by the jury at trial rather than on motions to dismiss, which is mentioned only in a footnote in Schallus's brief and not at all in Pugh's brief, is dispositive of their motions to dismiss Counts 1 and 28.

### 2.     Count 1 alleges a single conspiracy and is not duplicitous.

When a defendant moves to dismiss a count as charging multiple conspiracies, which is a claim of duplicity, the Court must accept as true the count's factual allegations.  *See United States v. Huet,* 665 F.3d 588, 595 (3d Cir. 2012).  The question before the Court is not whether the Indictment could be read to allege multiple conspiracies, but whether "the indictment *may be read* to allege a single unified scheme[.]"  *United States v. Sourlis*, 963 F. Supp. 568, 572 (D.N.J. 1996) (emphasis added; citation omitted).[3]  Count 1 alleges, and unquestionably "may be read to allege," a single conspiracy.

Count 1 alleges that all seven defendants and other co-conspirators conspired to commit health care fraud and wire fraud.  It alleges that all seven defendants had the common goal of unlawfully enriching themselves by submitting fraudulent insurance claims for compounded prescription medications and receiving a percentage of the money paid on those claims.  *See* Ind.

---

[2] The cases defendants cite from other circuits are not persuasive or even on point.  In *United States v. Jackson*, 926 F. Supp. 2d 691, 704-06 (E.D.N.C. 2013), the court found that the indictment alleged one conspiracy, but dismissed two defendants based on lack of allegations about them.  In *United States v. Eury*, 2015 WL 1861807, at *5-7 (M.D.N.C. Apr. 23, 2015), the indictment alleged two very distinct conspiracies that had different goals and members and operated at different times.  And *United States v. Munoz-Franco,* 986 F. Supp. 70 (D.P.R. 1997), is merely an order that provides scant reasoning.

[3] Even in reviewing a verdict after trial, the court considers not whether the evidence could prove multiple conspiracies, but whether "the evidence at trial proves *only* the existence of multiple conspiracies."  *United States v. Kelly*, 892 F.2d 255, 258 (3d Cir. 1989) (emphasis added).

¶ 4.  It then lists the manner and means the defendants used to further their scheme; as with any conspiracy, some involved all defendants, and some involved smaller groups.  *See United States v. Boyd*, 595 F.2d 120, 123-24 (3d Cir. 1978).  Count 1 alleges that all seven defendants:

- learned that the Pharmacy Benefits Administrator would pay thousands of dollars for a one-month supply of certain medications (¶ 5);

- shared in the proceeds of the fraud (¶ 9);

- recruited public employees and others who had insurance administered by the Pharmacy Benefits Administrator (¶ 10);

- paid other people to recruit individuals (¶ 11);

- paid individuals to agree to receive medications (¶ 12);

- caused the completion of new prescriptions after the Pharmacy Benefits Administrator stopped covering a medication (¶ 21); and

- caused the Pharmacy Benefits Administrator to pay over $50,000,000 for compounded medications (¶ 23).

Count 1 also alleges that all defendants other than Sara Hickman:

- persuaded individuals to receive medications without a doctor deciding that they were necessary (¶ 13);

- obtained insurance information from individuals and completed prescriptions without a doctor determining their medical necessity (¶ 14);

- had the prescriptions marked for 12 months of refills to obtain the highest reimbursement without a determination that those refills were necessary (¶ 16);

- secured the signature of Dr. John Gaffney and other doctors on prescriptions without the doctor having a relationship with the patient or determining medical necessity (¶ 18); and

- caused the prescriptions to be faxed to the Compounding Pharmacy (¶ 20).

These allegations of joint efforts by all defendants show that Count 1 alleges a single conspiracy.

The Third Circuit uses a three-part inquiry to distinguish a single conspiracy from multiple conspiracies: "'First, we examine whether there was a common goal among the conspirators. Second, we look at the nature of the scheme to determine whether the agreement contemplated

5

bringing to pass a continuous result that will not continue without the continuous cooperation of the conspirators.  Third, we examine the extent to which the participants overlap in the various dealings.'"  *United States v. Greenidge*, 495 F.3d 85, 93 (3d Cir. 2007) (quoting *Kelly*, 892 F.2d at 259).  The absence of any one factor is not dispositive.  *Id.*; *United States v. Padilla*, 982 F.2d 110, 115 (3d Cir. 1992).  These factors show that Count 1 alleges a single conspiracy:

> First:  Count 1 alleges a common goal among the conspirators:  to unlawfully enrich themselves by submitting fraudulent insurance claims and pocketing a cut of the insurance payments.  (¶ 4)  Pugh dismisses this as an insignificant common goal, but it is similar to common goals that courts have found indicative of one conspiracy.  *See, e.g., United States v. Onque*, 685 F. App'x 189, 194 (3d Cir. 2016) ("[T]he common goal was to obtain mortgage loans for profit"); *Greenidge*, 495 F.3d at 93 (common goal to make money by depositing stolen checks); *Padilla*, 982 F.2d at 115 ("common goals to obtain and sell cocaine for profit").

> Second:  The scheme required continuous cooperation of the conspirators to make money:  it required patient recruiters finding patients, persuading them (often with bribes) to receive the medications, and obtaining their insurance information; recruiters or middlemen forwarding prescriptions for signature by Dr. Gaffney; conspirators paying Dr. Gaffney to sign prescriptions; Dr. Gaffney signing the prescriptions; all conspirators causing the transmission of the prescriptions to the Compounding Pharmacy; the Hickmans receiving the money and paying the other defendants and co-conspirators, who then paid people below them.  This conspiracy would not have worked without the continuous combined efforts of the conspirators.

> Third:  The Indictment alleges extensive overlap in the conspirators' various dealings, both all seven together as well as overlap of particular subgroups of conspirators.

Pugh and Schallus seize upon individual paragraphs alleging actions of subgroups of conspirators to argue that those allegations show multiple conspiracies.  The Third Circuit has repeatedly rejected this very claim:

> The fact that conspirators individually or in groups perform different tasks in pursuing the common goal does not, by itself, necessitate a finding of several distinct conspiracies. . . . And even if a small group of co-conspirators are at the heart of an unlawful agreement, others who knowingly participate with the core members and others to achieve a common goal may be members of a single conspiracy. . . . It follows from these basic principles that the government, without committing a variance between a single conspiracy charged in an indictment and its proof at trial, may establish the existence of a continuing core conspiracy

6

which attracts different members at different times and which involves different
sub-groups committing acts in furtherance of the overall plan.

*United States v. Boyd*, 595 F.2d 120, 123 (3d Cir. 1978) (citations omitted); *accord Blumenthal v.
United States,* 332 U.S. 539, 558  (1947) (single conspiracy found where conspirators, through
separate agreements with a central figure, "became parties to the larger common plan"); *Bobb*, 471
F.3d at 495 ("[A] single drug conspiracy 'may involve numerous suppliers and distributors
operating under the aegis of a common core group.'") (citation omitted); *United States v. Smith*, 789
F.2d 196, 200 (3d Cir. 1986) ("[A] finding of a master conspiracy with sub-schemes does not
constitute a finding of multiple, unrelated conspiracies").  Nor does the fact that a conspiracy
revolved around one person show multiple conspiracies, as "a single conspiracy can involve one
pivotal figure who directs illegal activities while various combinations of other defendants further
those activities in different ways and at different times."  *Padilla*, 982 F.2d at 115.

Pugh argues at length that the Indictment alleges a "hub and spoke" conspiracy and lacks
allegations of connections between the spokes.  The structure of the Hickman conspiracy is more
like the pyramid structure that the Third Circuit found indicative of a single conspiracy in
*Greenidge*: that case had "recruiters" in the middle tier who found willing participants at the bottom
tier, and the money flowed down from leaders at the top of the pyramid.  495 F.3d at 90, 94-95; *see
also Onque*, 665 F. App'x at 194-95 (finding a single conspiracy where the mortgage fraud
conspiracy had a pyramidal structure with three tiers of conspirators, with straw purchasers at the
bottom and leaders at the top).  Pugh complains further that Count 1 does not allege evidence of
connections between "spokes," but the Indictment alleges that everyone worked together, and the
presence or absence of evidence is a matter for trial.[4]

_____

[4] Even in hub and spoke conspiracies, the Government does not have to prove connections between
the spokes; the Government must show only that the defendant knew he or she was part of a larger
operation.  *See United States v. Quintero*, 38 F.3d 1317, 1337 (3d Cir. 1994); *see also Kemp*, 500

7

For all these reasons, Count 1 certainly can be read as alleging a single conspiracy, and defendants' motion to dismiss should not be granted.

### 3.     Count 28 alleges a single conspiracy.

Pugh briefly reiterates the same arguments about Count 28, and they are equally unpersuasive. Count 28 realleges the conspiracy allegations in Count 1 and then alleges that the Hickmans and Pugh took the proceeds from the fraud described in Count 1 and conspired to engage in monetary transactions with that property. Ind. ¶ 30. The Hickmans received fraud proceeds from the Compounding Pharmacy and paid Pugh a portion. *Id. ¶* 32. Counts 28 further alleges numerous transactions by the three defendants to distribute the proceeds, including a $147,939.66 check from Boardwalk Medical LLC (the Hickmans' LLC) to BP Med 1 LLC (Pugh's LLC), *see id.* ¶ 1(e)), a $28,734.33 check the next day from BP Med 1 LLC to defendant Schallus, and various distributions from the Hickmans and Pugh to other accounts and entities. *Id.* ¶ 24.

In deciding whether to dismiss Count 28, the relevant question is whether this count "may be read" to allege a single conspiracy, *United States v. Sourlis*, 963 F. Supp. 568, 572 (D.N.J. 1996), and plainly it does, according to the *Kelly* factors. First, the conspiracy had a common goal: to share in and use the proceeds of the fraud. *See Greenidge*, 495 F.3d at 94 (finding that "shar[ing] in the illegal proceeds" was a common goal indicative of a single money laundering conspiracy). Second, the nature of their money laundering scheme, an extension of their fraud scheme, contemplated a continuous result that would not have worked without their continuous cooperation. The conspirators need to cooperate to take the fraudulent proceeds and distribute them to participants in the conspiracy. That each of them then moved their proceeds to their own separate

---

F.3d at 288 (one factor showing variance was that government failed to prove one spoke was aware of existence of others). Such evidence will be presented at trial, and there is no requirement to plead evidence in the Indictment.

8

accounts or assets does not show a separate conspiracy; the very idea of a money laundering conspiracy is to split the proceeds.  *See id.*  Third, the three worked together in the underlying conspiracy and in one identified transaction; like the defendants in *Greenidge*, they all "intended to split the proceeds." *Id.*  Count 28 alleges a single conspiracy and should not be dismissed.

**B.      Counts 37, 38, 49, and 50 Properly Allege an Offense Based on Alternative Theories of Liability and Should Not Be Dismissed.**

Counts 37, 38, 49, and 50 allege that Pugh knowingly engaged in four monetary transactions in criminally derived property:  a $28,734.33 check from BP Med 1 LLC to Schallus (Count 37), a $12,252.65 check from BP Med 1 LLC to Schallus (Count 38), a $65,000 debit transfer from BP Med 1 LLC to RPA Solutions (Count 49), and a $150,000 debit transfer from BP Med 1 LLC to Boulevard Capital (Count 50).  In each count, the Indictment charges that Pugh violated 18 U.S.C. §§ 1957 and 2.

Pugh claims these charges are improper because he reads them as charging him with aiding and abetting himself.  Because these counts do not say that Pugh aided and abetted himself, he apparently is arguing that the mere citation of 18 U.S.C. § 2 alleges that he aided and abetted himself.  Pugh misconstrues the significance of section 2 and ignores the Indictment's plain terms.

"'18 U.S.C. § 2 . . . is an alternative charge in every count, whether explicit or implicit.'" *United States v. Bryan*, 483 F.2d 88, 95 (3d Cir. 1973) (en banc) (citation omitted).  Aiding and abetting is not a separate offense, but merely an alternative basis of criminal liability available in every criminal case.  *Id.; see United States v. Campbell*, 256 F. App'x 546, 549 (3d Cir. 2007) (rejecting argument that an indictment would be duplicitous if it was interpreted to charge a substantive offense and aiding and abetting that offense).  These counts properly cite section 2 because that section is always available as a basis for criminal liability.

Pugh's argument also ignores the actual transactions alleged in Counts 37, 38, 49, and 50: they are four monetary transactions from BP Med 1 LLC to another party. The Indictment alleges the alternative theory of liability provided in section 2: namely, that Pugh aided and abetted (§ 2(a)) or caused (§ 2(b)) not himself, but another entity—BP Med 1 LLC—to engage in these monetary transactions. Under section 2, a defendant may be held liable for committing a crime through another, even if the other is innocent, *Bryan*, 483 F.2d at 92, and even if the other is a corporation or partnership. *United States v. Am. Inv. of Pittsburgh, Inc.*, 879 F.2d 1087, 1094-1103 (3d Cir. 1989) (affirming convictions based on § 2(b) for causing a bank not to file CTRs); *Burnham v. United States*, 297 F.2d 523 (1st Cir. 1961) (affirming conviction for aiding and abetting a partnership). Counts 37, 38, 49, and 50 allege offenses based on valid theories of prosecution and should not be dismissed.

## C.     The Court Should Reject the Arguments that the Health Care Fraud Counts Must Be Dismissed Based on the Claim That the Indictment Does Not Prove or Define Medical Necessity.

John and Thomas Sher contend that the conspiracy and substantive health care fraud charges against them must be dismissed because, they speculate, the Government did not prove to the grand jury that the compound prescriptions were medically unnecessary. Relatedly, Pugh seeks dismissal of the health care fraud charges because the Indictment fails to define the term "medical necessity."

Federal courts have repeatedly rejected motions to dismiss indictments for lack of proof or definition of medical necessity. *See United States v. Chalhoub*, 2018 WL 9802145, at *2-3 (E.D. Ky. Feb. 16, 2018) (denying motion to dismiss made on basis that medical necessity of implants was not proven in indictment because indictment "clearly and adequately inform[ed] [defendant] of the crimes with which he is charged"); *United States v. Med 1st*, 2017 WL 4848823, at *2 (W.D. Ky. Oct. 26, 2017) (rejecting argument that indictment must be dismissed because government cannot prove that procedures were medically unnecessary and therefore fraudulent); *United States v.*

10

*Convalescent Transp., Inc.*, 2005 WL 8170040, at *1 n.2 (E.D.N.C. Sept. 8, 2005) (rejecting argument in health care fraud case that "no fraud can exist in a case where the basis for defendants' actions is medical necessity").[5]  That is because proof is not at issue in an indictment—proof is saved for trial.  The function of an indictment is to put a defendant on notice of crimes he committed, when he committed the crimes, and the elements of those crimes.  Thus, in considering a motion to dismiss, the Court need not consider whether certain assertions were *proved* in the indictment, but rather whether the charges were sufficiently *pled* such that a defendant can prepare his defense and invoke double jeopardy if necessary.

Here, the Indictment sufficiently pleads health care fraud.  The 31-page, 36-paragraph, and 46-subparagraph Indictment clearly puts the defendants on notice of the charged crimes, the elements of those crimes, the relevant time periods, and details of the unlawful conduct in order for them to prepare their defense.[6]  Specifically regarding the substantive health care fraud counts, the Indictment incorporates the allegations in Count 1 describing the scheme, tracks the statutory language, and includes a detailed chart identifying the defendants charged in each count, the date of the conduct, and how the defendants executed their scheme to defraud health care benefit programs through the submission of fraudulent prescriptions.  The Indictment lays out in detail a straightforward fraud scheme that an average person can understand.[7]  No proof or definition of

---

[5]  The Shers' reliance on *United States v. Moore*, 423 U.S. 122 (1975) is misplaced because that case did not address dismissal of charges in an indictment for failure to prove medical necessity to the grand jury.  The issue in *Moore* was whether a physician could be prosecuted under the Controlled Substances Act ("CSA") for unlawful prescription drug distribution or whether his conduct fell within one of the exemptions of the CSA.

[6]  Moreover, the Government produced approximately 275,940 documents totaling 1,049,849 pages in discovery, which certainly gives the defendants added context to prepare for trial.

[7]  Given that proof of medical necessity is not needed, the Government does not currently intend to call an expert witness at trial.  Thus, the Shers' motion to preclude the Government from calling

medical necessity is required because the Indictment as it stands sufficiently sets forth the health care fraud charges.  Thus, the defendants' motion on these grounds should be denied.[8]

### D.    The Health Care Fraud Counts Are Not Unconstitutionally Vague and Do Not Fail to Allege Material Misrepresentations.

Pugh also claims that the conspiracy and substantive health care fraud counts should be dismissed because they are unconstitutionally vague and fail to allege material misrepresentations. Pugh avers that no medical standard, professional guideline, or certification governs or defines as unlawful the representations alleged in Paragraph 18 of the Indictment,[9] and therefore the Government cannot show that this conduct was fraudulent.

The health care fraud charges are not vague.  In considering claims that charges in an indictment are unconstitutionally vague, the Third Circuit has recognized that "no greater specificity than the statutory language is required so long as there is sufficient factual orientation to permit the defendant to prepare his defense and to invoke double jeopardy in the event of a subsequent prosecution." *United States v. Chartock*, 283 F. App'x 948, 953 (3d Cir. 2008) (citing *United States v. Kemp*, 500 F.3d 257, 280 (3d Cir. 2007)).  Thus, courts have routinely rejected claims that

---

such an expert should be denied as moot.  Should circumstances change, the Government will comply with the disclosure and notice obligations under the federal and local rules.

[8]  The Shers' memorandum also contains extensive argument on other issues about what evidence supposedly was and was not presented to the grand jury—which they cannot possibly know, as they do not have the grand jury transcripts—and what the evidence is against them.  Again, the sufficiency of the evidence is a question for trial.  The Government will present ample evidence at trial proving the Shers' guilt beyond a reasonable doubt.

[9]  Paragraph 18 of the Indictment provides: "It was further part of the conspiracy that defendants . . . and others secured and caused to be secured the signatures of co-conspirator John Gaffney and other doctors on Compounding Pharmacy's pre-printed prescription forms for individuals (a) without the doctors having a doctor/patient relationship with the individuals; (b) without the doctors determining that the individuals had a medical necessity for the compounded medication selected; (c) without the doctors considering a non-compounded prescription or over-the-counter medication for the individuals; and/or (d) without the doctors having evaluated whether the compounded medication would have any adverse effect on the individuals."

charges in similar health care fraud indictments are unconstitutionally vague, so long as sufficient information is pled to permit a defendant to prepare his defense and invoke double jeopardy.  *See Chalhoub*, 2018 WL 9802145 at *3-4; *Med 1st*, 2017 WL 4848823 at *2; *United States v. McLean*, 715 F.3d 129, 136-37 (4th Cir. 2013); *United States v. Capener*, 2006 WL 8429828, at *2 (D. Nev. Sept. 22, 2006).

Here, the Indictment more than adequately informs Pugh of the laws he violated and the surrounding circumstances such that he can prepare his defense and address any double jeopardy concerns.  The Indictment alleges the health care fraud conspiracy scheme in 24 paragraphs with 46 subparagraphs, with fraudulent prescriptions at the heart of the scheme.  In the individual health care fraud counts, which are acts to execute the scheme, the Indictment tracks the language of the health care fraud statute and identifies the defendant, time period, and the unlawful conduct of causing specific, identified prescriptions—the misrepresentations—to be faxed to the Compounding Pharmacy.[10]  Although Pugh attempts to extract Paragraph 18 from the Indictment and seize upon individual terms in that paragraph to support his vagueness argument, "[i]ndictments must be read in their entirety and with common sense."  *Id.* at *2; *see also United States v. Whited*, 311 F.3d 259, 262 (3d Cir. 2002).  The Indictment specifies numerous ways in which the prescriptions were fraudulent, including, for example, that patients had no need for them and a doctor signed them without seeing the patient.  Despite Pugh's assertions to the contrary, "[t]he fact that the Indictment alleges a variety of methods in which Defendant perpetrated the fraud does not invalidate the

---

[10] These counts refer to the individuals identified by number.  The Government has given the Defense the names of those individuals.

Indictment, for an indictment may allege that the Defendant committed the offense by one or more specific means." *Capener,* 2006 WL 8429828 at \*3.[11]

Pugh's argument that no medical or professional standard, guideline, or certification governs or defines as unlawful the representations alleged in the Indictment misses the mark because, once again, this is not the governing standard of an indictment. An indictment need only put a defendant on notice of the crimes with which he is charged and the elements and applicable time periods of those crimes in order to prepare a defense and dispel double jeopardy concerns. An indictment does not need to reference or define terms and conduct pursuant to any standard, guideline, or certification. Indeed, courts have previously rejected similar arguments seeking to challenge indictments for failure to satisfy medical criteria in their pleadings. *See United States v. McGill*, 2016 WL 8716240, at \*11 (E.D. Pa. May 13, 2016) (rejecting argument that reliance on Medicare regulation needed to satisfy health care fraud allegation in indictment); *United States v. Arshad*, 325 F. Supp. 3d 695, 699-701 (E.D. La. 2018) (rejecting argument in home health fraud case that indictment should be dismissed because it did not meet Medicare definition of "homebound"); *United States v. Franklin-El*, 554 F.3d 903, 911 (10th Cir. 2009) ("Medicaid regulations do[] nothing to alter the straightforward nature of the health care fraud statute or the straightforward allegations of fraud lodged against Defendant."). And, although Pugh cites several outside sources to distract from the main point, the law is clear that review of a motion to dismiss an indictment "is a narrow, limited analysis geared only towards ensuring that legally deficient charges do not go to a

---

[11] Pugh avers that use of the phrase "and/or" renders the representations alleged in Paragraph 18 unconstitutionally vague because one cannot ascertain whether the compound medication prescriptions suffered from one or more of the alleged deficiencies. Courts have previously rejected similar arguments. *See United States v. Denison*, 508 F. Supp. 659, 666 (M.D. La. 1981) (rejecting argument that indictment should be dismissed because use of word "or" in statute renders it unconstitutionally vague); *United States v. Simpson*, 228 F.3d 1294, 1300 (11th Cir. 2000) (noting that "where an indictment charges in the conjunctive several means of violating a statute," conviction may be obtained on proof of one or more of the means).

jury," and the Court should "limit its inquiry to the four corners of the Indictment" and not consider extrinsic evidence. *United States v. Bergrin*, 650 F.3d 257, 268 (3d Cir. 2011); *United States v. Huet*, 665 F.3d 588, 593 (3d Cir. 2012).

Pugh also claims that particular misrepresentations are not material, but he fails to address all alleged facts and misrepresentations. The Indictment must only "allege the necessary facts from which to infer the materiality of the false representations." *United States v. Cooper*, 283 F. Supp. 2d 1215, 1233 (D. Kan. 2003) (finding that overpayment amounts for medical equipment listed in indictment "allege the necessary facts from which to infer the materiality of the false representations"). "[N]o magic words are necessary." *Capener*, 2006 WL 8429828 at *4. At a minimum, the following facts alleged in the Indictment show materiality: doctors signed prescriptions for people who were not their patients; doctors signed prescriptions without determining they were necessary; doctors were paid; patients were paid; conspirators selected medications and refills patients did not need; and patients agreed to receive prescriptions they did not need. The Court should reject this argument and uphold the health care fraud counts against Pugh.

### E.    The Indictment Sufficiently Alleges Knowledge of the Defendants.

Pugh and Thomas Sher likewise allege that certain health care fraud charges against them must be dismissed because they lacked the requisite knowledge to commit these crimes. Specifically, Pugh argues that, with respect to the health care fraud charges in Counts 9-13, "[n]owhere in the Indictment does it allege that [he] knew that the allegedly false statements were, in fact, false at the time they were made." (Pugh Br. at 27). Sher argues that Count 21—which charges him and William Hickman for the submission to the Compounding Pharmacy of a libido cream prescribed to Thomas Sher—should be dismissed because, he claims, he did not know about the prescription.

Contrary to Pugh's assertions, the Indictment alleges several times that Pugh knowingly and willfully participated in a scheme to defraud health care benefit programs through false and fraudulent pretenses, representations, and promises. Ind. ¶¶ 3, 3(a), 26. The Indictment also alleges many specific actions taken by Pugh showing guilty knowledge, including that he persuaded people to get medically unnecessary prescriptions, paid individuals to receive prescriptions, and secured signatures of doctors on prescriptions without medical necessity or even a doctor's visit. *Id*. ¶¶ 12-18, 21. These allegations more than sufficiently allege guilty knowledge, both generally and specifically at the time. Nothing more is required. *See Cooper*, 283 F. Supp. 2d at 1231 (rejecting argument in health care fraud case that indictment was defective for failure to allege specifically that defendant knew claims were false when submitted).

With respect to Sher's argument, Count 21 is sufficient to withstand dismissal—it incorporates the same allegations made in Count 1 against Pugh about guilty knowledge, and then alleges when the prescription was submitted to the Compounding Pharmacy, who submitted it, for whom the prescription was submitted, and the requisite statutory language. Nothing additional is required for purposes of sufficiency of the Indictment. Although Sher claims the evidence will show that he did not submit the prescription himself or have any knowledge of it, that is an issue for trial, and, in any event, he did not need to submit the prescription himself to be found guilty. *See United States v. McGill*, 2016 WL 8716240 at *15 (E.D. Pa. 2016) ("[E]ven if the submission of bills to Medicare were an element of the offense, the jury was not required to find that McGill submitted those bills herself."). Therefore, Count 21 of the Indictment should not be dismissed.

## II.    DEFENDANTS' MOTIONS TO SEVER SHOULD BE DENIED.

Pugh and Schallus argue they should be severed and tried separately from their co-defendants because they will be significantly prejudiced in a joint trial. Specifically, they claim prejudice due to the length and complexity of the Indictment and trial, disparities in the defendants'

degrees of involvement in the conspiracies, and evidence against codefendants that will "spill over" and taint them in the eyes of the jury.  Their motions should be denied.

"[A] district court should grant severance under Rule 14[12] only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *United States v. Zafiro*, 506 U.S. 534, 539 (1993).  The defendant bears a "heavy burden" of demonstrating "substantial prejudice" by a joint trial.  *See United States v. DiPasquale*, 740 F.2d 1282, 1293 (3d Cir.1984); *United States v. Eufrasio*, 935 F.2d 553, 568 (3d Cir. 1991).  In considering severance, the Court should weigh potential undue prejudice to a defendant against judicial economy and prejudice to the Government. *United States v. Sandini*, 888 F.2d 300, 305 (3d Cir. 1989).

A.      **Judicial Economy and Prejudice to the Government Weigh Against Severance.**

Here, Pugh and Schallus point to the length and alleged complexity of the Indictment and trial as a basis for severance. It is well established, however, that related defendants and claims should be tried together for judicial economy purposes so as to avoid recalling the same witnesses, introducing the same evidence, and burdening the court, Government, and potential jurors with multiple duplicative trials.  *See Eufrasio,* 935 F.2d at 568 ("The public interest in judicial economy favors joint trials where the same evidence would be presented at separate trials of defendants charged with a single conspiracy."); *United States v. Lacerda*, 2013 WL 3177814, at *7 (D.N.J. June 29, 2013) (Hillman, J.), *aff'd* 2020 WL 2121456 (3d Cir. May 5, 2020) ("Severance would further delay resolution of this matter, expend unnecessary funds in a time of judicial budgetary constraints, and would inconvenience judges, court staff, witnesses, potential jurors, and public

---

[12]   Rule 14 provides: "If the joinder of offenses or defendants in an indictment, an information, or a consolidation for trial appears to prejudice a defendant or the government, the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires."  Fed. R. Crim. P. 14(a).

authorities.").  Further, "[t]he inconvenience of a longer trial, involving multiple defendants, is not a violation of 'a specific trial right'" warranting severance.  *United States v. Fumo*, 2008 WL 109667, at *6 (E.D. Pa. Jan. 9, 2008).  If seven defendants remain at the time of trial, the Government plans to present its case-in-chief over the course of approximately four to five weeks—a reasonable length of time.  Though this case involves many charges, the crimes that form the basis of those charges are related and not complex.  *Id*.  The substantive health care fraud, wire fraud, and money laundering counts share a close nexus with the two conspiracy counts.  Finally, severance will greatly burden the Government, as it would have to regurgitate a truncated version of its case-in-chief at any subsequent trials.  *See Lacerda*, 2013 WL 3177814 at *7.  Thus, severance is unwarranted when weighing judicial economy and prejudice to the Government against any potential prejudice to the defendants.

### B.      There is a Strong Preference for Jointly Trying Co-Defendants in Criminal Conspiracies.

As previously recognized by this Court, the "preference for joint trials is particularly strong in cases involving multiple defendants charged [with] conspiracy" because the Government's proof in such cases necessarily relies on conspiracy connections.  *United States v. Scarfo*, 2012 WL 4120504, at *10 (D.N.J. Sept. 12, 2012) (Kugler, J.) (internal citations omitted).  Moreover, "joint trials aid the finder of fact in determining the full extent of the conspiracy while preventing any tactical disadvantages to the government that might arise from having to disclose its case through successive trials."  *Id*. at *10 (citing *United States v. Sandini*, 888 F.2d 300, 307 (3d Cir. 1989); *United States v. Voigt*, 89 F.3d 1050, 1094 (3d Cir. 1996)) (further citation omitted).

On this point, Pugh and Schallus argue that their actions are separate from the conduct of their other codefendants.  For the reasons discussed above, the Indictment alleges one conspiracy of all seven defendants.  Anticipating this, Pugh and Schallus also assert that—even if their conduct

was part of one conspiracy—they nevertheless should be severed because they had minor and different roles compared to their codefendants.  Relatedly, Schallus points to the fact that Pugh and the Hickmans are charged in a separate money laundering conspiracy, which he claims would make it difficult for the jury to compartmentalize the evidence against each defendant.

The court addressed a similar situation in *United States v. Fumo*, 2008 WL 109667 (E.D. Pa. Jan. 9, 2008).  In that case, a former senator was charged with defrauding the senate, a non-profit, and a museum, as well as a separate tax scheme.  *Id*. at *2.  Indicted alongside him in certain counts were staffers who participated in the conspiracies.  *Id*. at *1.  The staffers sought severance on the basis that their roles in the schemes were minor and different.  The court denied severance, noting the strong preference for joint trials and that the jury would "be able to compartmentalize the evidence against the separate defendants" regardless any "varied and discrete roles" they played in each conspiracy.  *Id*. at *6-7.

Judge Hillman also addressed a similar situation in *United States v. Lacerda*, a multi-defendant, 44-count fraud case.  In *Lacerda*, a defendant sought severance because she was not a "core member" of the conspiracies and claimed her roles in the schemes were "fundamentally different" than those of her codefendants.  2013 WL 3177814 at *5, *aff'd* 2020 WL 2121456 (3d Cir. May 5, 2020).  The court found that "one's status as a 'minor' or 'different' defendant does not automatically translate into impermissible prejudice by means of joinder. . . [D]isparity in the quantity of evidence and of proof of culpability are inevitable in any multi-defendant trial, and by themselves do not warrant a severance."  *Id*. at *7 (internal citations & quotations omitted).

This Court should follow the logic of *Fumo* and *Lacerda* here.  There is no basis to disturb the strong presumption of jointly trying co-conspirators.  All counts in the Indictment share a transactional nexus, and all tie to a conspiracy to defraud health care benefit programs through submissions of false and fraudulent insurance claims for compounded prescription medications or a

19

conspiracy to launder the proceeds of the health care and wire frauds.  Pugh and Schallus took fraudulent actions to effectuate the manner and means of the conspiracies, including causing the submission of numerous false prescriptions and five money laundering transactions as charged in the Indictment (Counts 5-13, 27, 35-38, 49-50).

Moreover, although Pugh and Schallus are charged in fewer counts than the Hickmans, there still is no reason the jury cannot compartmentalize the evidence against different defendants.  As this Court noted in *Scarfo*, even if "the conspiracies alleged in the Indictment involve different time periods and different subject matter[,] [t]his does nothing to further the defendants' case for severance.  [T]he fact that the various conspiracies alleged in the Indictment rest on distinct factual bases will help, rather than hinder, the jury in its efforts to compartmentalize the evidence introduced against each defendant."  2012 WL 4120504 at *16.  Further, even if granted separate trials, much of the evidence would still be admissible against Pugh and Schallus because they are charged with conspiracy.  *See id.* at *14 (noting admissibility of co-conspirator conduct in separate trials); *Lacerda*, 2013 WL 3177814 at *7 (noting admissibility of background evidence and co-conspirator statements); *Fumo*, 2008 WL 109667 at *18 (noting admissibility of co-conspirator crimes to explain motive).  Thus, the Court should deny the defendants' motion.

### C.    The Defendants' Spillover Arguments Are Overstated

Pugh and Schallus contend that the overwhelming evidence against the Hickmans will spill over and taint them, depriving them of a fair trial.  Their claims do not justify severance.

First, Pugh and Schallus's contention that the evidence against the Hickmans is comparatively overwhelming omits the staggering amount of evidence against them, including:

- Compound medication prescriptions for Schallus and individuals they recruited to receive compound medications, based solely on high insurance reimbursement rates and regardless of medical necessity;

- Testimony from co-conspirators who have pled guilty to date about their

knowledge of Pugh and Schallus' involvement the conspiracies;

- Testimony from a significant number of recipients of the compound prescription medications stating that they had no need for the compound medications, often discarded them, and only agreed to receive them because they were paid or to help Pugh and Schallus;

- Bank transactions and checks showing payments to and from Pugh and Schallus to effectuate the conspiracy and reap profits from it;

- Checks showing Pugh's laundering of money through his company, BP Med 1 LLC; and

- Evidence depicting the thousands of dollars per prescription paid out by insurance companies for the false prescriptions Pugh and Schallus caused.

Thus, Pugh and Schallus' claims are contradicted by the significant evidence the Government will introduce against them at trial.

Second, even if the evidence would be uneven, defendants are not entitled to severance merely because evidence against a co-defendant is more damaging. *United States v. Eufrasio*, 935 F.2d 553, 568 (3d Cir. 1991) ("Neither a disparity in evidence, nor introducing evidence more damaging to one defendant than others, entitles seemingly less culpable defendants to severance."); *United States v. Urban*, 404 F.3d 754, 776 (3d Cir. 2005) (affirming denial of severance regardless of potentially more evidence against codefendants).  Pugh and Schallus' spillover complaint that they are not charged in some counts is also not, on its own, a basis for severance.  *See United States v. McGlory*, 968 F.2d 309, 340 (3d Cir. 1992) ("[T]he mere introduction of other crimes evidence against one defendant does not entitle a co-defendant to a separate trial.").

Finally, even if there is a risk of potential prejudice, the prejudice must be "substantial" and severance should be a remedy of last resort.  Instead, certain steps should be taken first.  For example, the Court can address the issue of whether a juror could be influenced against one defendant because of the presence of another defendant during the jury selection process.  *See Scarfo*, 2012 WL 4120504 at *12. The Court can also issue limiting instructions about

compartmentalizing evidence.  *Id.*  For example, the Third Circuit sanctioned the following

instruction in *Urban*: "[T]he fact that you may find a defendant guilty or not guilty of one of the

offenses should not control your verdict as to any of the other offenses charged," and "you must

give separate and individual consideration to each charge against each defendant."  404 F.3d at 776.

The Court could give similar instructions here.  Given the presumption that the jury follows such

instructions, *Zafiro*, 506 U.S. at 540, there would be little risk of spillover prejudice.  Thus, the

severance motions should be denied.

## III.   DEFENDANTS' MOTION FOR A BILL OF PARTICULARS SHOULD BE DENIED.

Defendants Pugh and Schallus seek an extensive bill of particulars detailing, among other

things, why prescriptions were fraudulent, what the terms "medical necessity" and "doctor/patient

relationship" mean, and who faxed prescriptions to the Compounding Pharmacy.  Defendants claim

that they cannot prepare for trial unless the Government provides detailed answers to what amounts

to contention interrogatories.  In light of the details provided in the Indictment and the extensive

information provided in discovery, their motions should be denied.

### A.   A Bill of Particulars is Unwarranted Because the Indictment and Discovery Give the Defendants Ample Information.

A bill of particulars is required only when an indictment is too vague to permit the defendant

to understand the charges and prepare a defense, avoid unfair surprise, and assert a claim of double

jeopardy where appropriate.  *United States v. Urban*, 404 F.3d 754, 771-72 (3d Cir. 2005).  "Only

where an indictment fails to perform these functions, and thereby 'significantly impairs the

defendant's ability to prepare his defense or is likely to lead to prejudicial surprise at trial[,]' will

we find that a bill of particulars should have been issued."  *Id.* (citations omitted).  If the indictment

enables the defendant to understand the accusations against him and the central facts the

Government will present at trial, a bill of particulars is unwarranted.  *See United States v. Rosa*, 891 F.2d 1063, 1066-67 (3d Cir. 1989); *United States v. Zolp*, 659 F. Supp. 692, 706 (D.N.J. 1987).

"A bill of particulars . . . is not intended to provide the defendant with the fruits of the government's investigation, [but] is instead intended to give the defendant only that minimum amount of information necessary to permit the defendant to conduct his own investigation." *United States v. Smith*, 776 F.2d 1104, 1111 (3d Cir. 1985); *see also Eufrasio*, 935 F.2d at 575; *United States v. Addonizio*, 451 F.2d 49, 64 (3d Cir. 1971).  "A bill of particulars is not designed to: obtain the government's evidence; restrict the government's evidence prior to trial; assist the defendant's investigation; obtain the precise way in which the government intends to prove its case; interpret its evidence for the defendant; or disclose its legal theory." *United States v. Bellomo*, 263 F. Supp. 2d 561, 580 (E.D.N.Y. 2003).  And courts have "declined to require the Government to answer a set of detailed interrogatories in the guise of a bill of particulars." *United States v. Kenny*, 462 F.2d 1205, 1212 (3d Cir. 1972).

The Indictment here is highly detailed and does much more than merely track the statutory language.  After identifying the named conspirators and another six uncharged co-conspirators, the Indictment details the actions of the conspiracy in 24 paragraphs with 46 subparagraphs.  The Indictment then explains the process used for filling the fraudulent prescriptions for compounded medications and billing insurance.  Ind. ¶ 2.  After the charging paragraph, 18 paragraphs describe the manner and means through which defendants obtained fraudulent compounded prescriptions.  *Id.* ¶¶ 5-23.  These paragraphs include such details as how individuals were identified, recruited, and persuaded to receive medications; the process of completing prescriptions to obtain the highest possible reimbursement; how doctors signed prescriptions without determining that their medical necessity or even having any relationship with the patient; how prescriptions were sent to the Compounding Pharmacy; and how the fraudulent proceeds were distributed.  Count 1 concludes by

identifying 26 acts in furtherance of the scheme.  *Id.* ¶ 24.  "[T]he specificity with which" the Indictment identifies the time period, events, and transactions at issue make it "highly unlikely" that defendants might be "unfairly surprised with . . . unfamiliar" allegations at trial.  *United States v. Moyer*, 674 F.3d 192, 203 (3d Cir. 2012).

If, as was done here, the Government supplements a detailed charging document with substantial discovery, a bill of particulars is unnecessary.  *Urban*, 404 F.3d at 772.  Where "discovery provided by the government fills in the outline of the indictment, the necessity for a bill of particulars declines."  *United States v. Caruso*, 948 F. Supp. 382, 393 (D.N.J. 1996).  Presumably based on current practices[13] of providing detailed indictments and extensive discovery before trial, Judge Hillman concluded: "'The current case law does not favor granting motions for bills of particulars.'"  *United States v. Lacerda*, 2013 WL 3177814 at *14 (D.N.J. June 19, 2013) (quoting *United States v. Kemp*, 2004 WL 2757867 (E.D. Pa. Dec. 2, 2004)).

Defendants here have received extensive information in discovery, including the largest amount in May 2019.  The Government has produced approximately 275,000 documents organized by producing party with load files, which makes the documents readily accessible and searchable through a review platform.  As a result, a defendant can identify and review, for example, all documents produced by Boardwalk Medical LLC or the Compounding Pharmacy.  The Government also retained the original organization of the documents as produced, and so a defendant can, for example, go to the documents produced by Dr. John Gaffney's office, determine which individuals are not patients of Dr. Gaffney, and locate the files for his patients.  And because the documents

---

[13] Pugh relies heavily on the advisory committee's comment that Rule 7 was amended to encourage a more liberal attitude towards bills of particulars, but that comment was made in 1966, and federal indictments and discovery practices have changed greatly in the past 54 years.

were produced digitally, defendants can do searches and find in seconds all documents mentioning themselves or other individuals.

In addition to these documents, the Government has produced memoranda summarizing interviews of over 250 witnesses, including memoranda of at least one (and often more than one) interview with 22 of the 23 members of the Hickman organization who have pled guilty, along with the documents used in each interview.  Because these interview memoranda were produced in digital form, defendants can find in seconds which witnesses talked specifically about them.  In addition, the Government will produce, before trial, its trial exhibits and grand jury testimony of trial witnesses.  The Government's discovery production is so complete and comprehensive that, unlike virtually every criminal case with many defendants, not one defendant has filed a motion complaining that the discovery is insufficient.  Each defendant therefore has more than "that minimum amount of information necessary to permit the defendant to conduct his *own* investigation," *Smith*, 776 F.2d at 1111, and a bill of particulars is unwarranted.

In considering whether to grant a bill of particulars, a court also must weigh the burden on the Government, "the government's interest in not being forced to divulge the entirety of its case prior to trial," *Zolp*, 649 F. Supp. at 706, and "the unfairness that can result from forcing the government to commit itself to a specific version of the facts."  *Rosa*, 891 F.2d 1066.  Courts are understandably reluctant at the pretrial stage to require a bill of particulars because it "would unfairly define and limit the government's case."  *United States v. Crabb*, 2008 WL 794871, at *3 (M.D. Pa. March 24, 2008).

In sum, the Indictment and extensive discovery here clearly "contain[] sufficient factual and legal information for the defense to prepare its case."  *United States v. Wabo*, 290 F. Supp. 2d 486, 490 (D.N.J. 2003).  As will be clear when reviewing defendants' individual requests, they have enough information to prepare for trial, and their request for a bill of particulars should be denied.

B.      **Defendants' Individual Requests**

1.      **Particular false statements and how and why they are false**

Pugh and Schallus seek a bill of particulars detailing which false statements the Government

relies on and explaining how they were false.  The Indictment makes it quite clear that this case is

about fraudulent prescriptions and explains how and why the prescriptions are fraudulent, including,

for example, that patients were paid to receive medicines they did not need and doctors signed

prescriptions for people who were not their patients.  Witness interviews give more information, as

interviews of co-conspirators and patient witnesses describe how patients, for example, received

prescription medications without asking for them or seeing a doctor.

The Third Circuit has held that the Government need not provide a bill of particulars

detailing which statements are fraudulent and how and why they were fraudulent.  *Moyer*, 674 F.3d

at 203.  The court explained that the government is not required to "identify every omission or

inclusion that rendered false the documents identified in the indictment" or "'at the pre-trial stage,

weave the information at its command into the warp of a fully integrated trial theory for the benefit

of the defendant.'"  *Id.* (citation omitted).  Many other courts have denied bills of particulars

seeking details about false statements or fraudulent schemes.  In *Lacerda*, for example, Judge

Hillman denied a request to identify the specific misrepresentations in a fraud case, finding that the

indictment detailed numerous false representations and that "the Government should not be required

to disclose the specific information related to Defendants' alleged misrepresentations."  2013 WL

3177814 at *15; s*ee also United States v. Delle Donna,* 552 F. Supp. 2d 475, 498 (D.N.J. 2008)

(declining to order bill of particulars seeking particulars of mail fraud theory: "the bill is not

designed to compel the government to detailed exposition of its evidence or to explain the legal

theories upon which it intends to rely at trial"); *Sourlis*, 953 F. Supp. at 579-80 (rejecting request for

bill of particulars seeking details about misrepresentations); *United States v. Knight*, 2013 WL

3367259, at *4 (E.D. Pa. July 3, 2013) (rejecting request for bill of particulars identifying specific material deceptions by defendant).

The Indictment and discovery give the defendants ample information about the fraud scheme to prepare for trial.  Defendants' request should be denied.

### 2.      Identity of unindicted co-conspirators and others

Defendants have no shortage of information about unindicted persons who were part of the Hickman organization:  six are identified in the indictment by name; those six and another 17 have pled guilty to conspiracy to commit health care fraud; and three more are under indictment in *United States v. Monaco*, Crim. No. 19-716 (RBK).  The Government also has produced countless interviews of persons who played large and small roles in the Hickman organization, including interviews of 22 co-conspirators who have pled guilty and additional patient recruiters.  What the defendants really want is not to find out who was involved in the Hickman conspiracy—because they have that information—but to obtain the Government's position about which individuals were co-conspirators or otherwise played a role in the events in this case.

The law does not require such information in a bill of particulars.  "'It is well settled that courts are 'highly reluctant to require a bill of particulars when defendants have asked for specific identities of coconspirators.'" *United States v. Smukler*, 330 F. Supp. 3d 1050, 1066 (E.D. Pa. 2018) (citation omitted).  One court specifically declined the defendants' request "to require the government to make legal conclusions as to numerous individuals who were peripherally involved in this matter." *United States v. Mariani*, 7 F. Supp. 2d 556, 560-61 (M.D. Pa. 1998).  Numerous other courts in this circuit have denied requests that the government identify unindicted co-conspirators or persons identified as "others" in the indictment.  *See, e.g., United States v. Cook*, 2018 WL 1744682, at *2 (M.D. Pa. April 11, 2018); *United States v. Atwell*, 2015 WL 2092687, at *5 (D.N.J. May 5, 2015); *United States v. Depiro*, 2013 WL 663303, at *5 (D.N.J. Feb. 20, 2013)

(declining request for "the identify of all unindicted co-conspirators and aiders and abettors");

*Knight*, 2013 WL 3367259, at *4-5 (rejecting request to identify co-conspirators and persons

identified as "others" in the indictment); *Delle Donna*, 552 F. Supp. 2d at 498 (declining request for

bill of particulars identifying all persons who participated in the offenses); *United States v.*

*Sampson*, 2012 WL 214707, at *3 (M.D. Pa. Jan. 24, 2012) (denying request because defendant had

witness interviews and plea agreements of several co-conspirators); *see also United States v. Coffey*,

361 F. Supp. 2d 102, 122 (E.D.N.Y. 2005) ("Courts have been highly reluctant to require a bill of

particulars when defendants have asked for specific identities of co-conspirators or others

involved.").[14]  This request should be denied as well.

### 3.       Definitions and explanations of terms used in the Indictment

Defendants also ask that the Government be compelled to define such terms as "medical

necessity" and "doctor/patient relationship."  "[I]t is well established that the government is not

required to explain to defendants through a bill of particulars 'the legal theories upon which it

intends to rely a trial.'" *Lacerda*, 2013 WL 3177814 at *16 (quoting *Delle Donna*, 552 F. Supp. 2d

at 498).  Courts have rejected attempts to require the Government to define and explain terms in the

indictment.  *See Coffey*, 361 F. Supp. 2d at 121.  There is no basis for defendants' request that the

Government be required to define these terms.

### 4.       Other evidentiary details

Defendants also request numerous other evidentiary details, such as who paid Dr. Gaffney,

who sent faxes from doctors' offices to the Compounding Pharmacy, which doctors signed

---

[14] Defendants cite cases largely from outside this circuit in which courts required identification of
co-conspirators.  Those decisions turned on the particular facts of those cases, including the
nature of the case and the extent of information provided in the indictment and discovery.  The cases cited
above show that, at least in this circuit, when extensive discovery has been provided, courts have
not required identification of unindicted co-conspirators.

prescriptions, what duties William Hickman owed to his employers, what other insurance plans were involved, and many other specific facts.  These requests are exactly the kind of interrogatories and requests for a summary of the Government's evidence that courts have rejected.  *See, e.g., United States v. Kenny,* 462 F.2d 1205, 1212 (3d Cir. 1972); *Depiro*, 2013 WL 663303 at *5.  A bill of particulars "'is not designed to compel the government to detailed exposition of its evidence.'" *Delle Donna*, 552 F. Supp. 2d at 498 (citation omitted).  A request for the "when, where and how" of particular acts is "tantamount to a request for 'wholesale discovery of the Government's evidence,' which is not the purpose of a bill of particulars under Fed. R. Crim. P. 7(f)." *United States v. Armocida*, 515 F.2d 49, 54 (3d Cir. 1975).  Defendants are not entitled to a bill of particulars listing these evidentiary details.

Defendants have had more than enough information to investigate this case and prepare their defense for more than a year.  Their requests for a bill of particulars should be denied.

## IV.    DEFENDANT PUGH'S REQUEST FOR THE GRAND JURY INSTRUCTIONS ON AIDING AND ABETTING SHOULD BE DENIED.

Based on his erroneous argument that the Indictment charges him with aiding and abetting himself, Pugh asks to see the instructions given to the grand jury on aiding and abetting, claiming that the grand jury must have been improperly instructed about the law of aiding and abetting.  As was demonstrated in Point I.B. above, it is Pugh who is misinformed about the law of aiding and abetting and misunderstands the allegations in the Indictment.  He has no basis for claiming that the grand jury was in any way misinformed.

Pugh also has failed to satisfy his heavy burden under Fed. R. Crim. P. 6(e) to show a "particularized need" before he can obtain grand jury minutes.  *See Pittsburgh Plate Glass Co. v. United States*, 360 U.S. 395, 400 (1959).  To demonstrate "particularized need," the requesting party "must show that the material they seek is needed to avoid a possible injustice in another

judicial proceeding, that the need for disclosure is greater than the need for continued secrecy, and that their request is structured to cover only material so needed." *Douglas Oil Co. v. Petrol Stops N.W.*, 441 U.S. 211, 222 (1979). Only in "exceedingly rare cases" are defendants "able to make a factually based showing of particularized need for the production and inspection of grand jury materials." *United States v. Naegele*, 474 F. Supp. 2d 9, 10–11 (D.D.C. 2007). Because grand jury proceedings carry a "presumption of regularity, " *Hamling v. United States*, 418 U.S. 87, 139 n.23 (1974), "[m]ere speculation that . . . the Government may have improperly instructed the grand jury . . . falls far short of the showing to overcome the presumption of secrecy." *United States v. Forde*, 740 F. Supp. 2d 406, 414 (S.D.N.Y. 2010). When defendants merely speculate that the grand jury was improperly instructed, courts consistently have rejected their requests for disclosure of grand jury instructions. *See, e.g., United States v. Singhai*, 876 F. Supp. 2d 82, 99 (D.D.C. 2012); *Forde, 740 F. Supp. 2d at 414; *United States v. Trie,* 23 F. Supp. 2d 55, 62 (D.D.C. 1998); *United States v. Pike Indus., Inc.,* 575 F. Supp. 885, 891 (D. Vt. 1983).

Pugh has provided no rational basis for inspecting the instructions to the grand jury, much less satisfied the stringent requirement of showing a "particularized need" for those instructions. His request should be denied.

## V.   THIS CASE SHOULD NOT BE TRANSFERRED TO THE NEWARK VICINAGE.

Defendant Pugh asks the Court to transfer this matter to the Newark Vicinage due to allegedly prejudicial pretrial publicity. The Court should deny this motion.

Federal Rule of Criminal Procedure 21 governs venue transfer and provides that a court should transfer proceedings to another district only if "so great a prejudice against the defendant exists in the transferring district that the defendant cannot obtain a fair and impartial trial there."

Fed. R. Crim. P. 21(a).[15]  Presumed prejudice in such instances is "exceedingly rare."  *Riley v. Taylor*, 277 F.3d 261, 299 (3d Cir. 2001).  A defendant's burden of establishing prejudicial pre-trial publicity is a "heavy one" because "the presumed prejudice principle is rarely applicable and is reserved for an extreme situation."  *United States v. Campa*, 459 F.3d 1121, 1143 (11th Cir. 2006); *see also United States v. De Peri*, 778 F.2d 963, 971-72 (3d Cir. 1985).  The mere fact that community members are cognizant of the crimes and defendants' identities does not, by itself, render the trial constitutionally unfair.  *See Dobbert v. Florida*, 432 U.S. 282, 303 (1977).  *Skilling v. United States*, 561 U.S. 358, 380-82 (2010) enumerated factors to consider: (1) the size and characteristics of the community in which the crime occurred; (2) news coverage content; (3) timing of the coverage; and (4) the existence, if any, of media interference with court proceedings.[16]

The first *Skilling* factor—the community size and characteristics—weighs in favor of keeping the case in Camden.  The Camden Vicinage is comprised of seven counties —some urban and some more rural—covering almost 3,000 square miles and with a population of over 1,823,000 people.[17]  Thus, a significant and diverse jury pool exists.  *See Diehl-Armstrong*, 739 F. Supp. 2d at 793; *United States v. Savage*, 2012 WL 2376680, at *4 (E.D. Pa. June 25, 2012).  Voir dire will readily reveal any juror in the pool who may have bias about the case.  *See United States v.*

---

[15]  Subsection (b) further provides that the Court "may transfer the proceeding, or one or more counts, against that defendant to another district for the convenience of the parties, any victim, and the witnesses, and in the interest of justice."  Fed. R. Crim. P. 21(b).  However, Pugh's motion appears to be brought pursuant to subpart (a) of Rule 21.

[16]  The same factors have been considered by courts in examining the characteristics of a particular division or vicinage within a larger federal district with multiple divisions or vicinages.  *See United States v. Diehl-Armstrong*, 739 F. Supp. 2d 786, 793 (W.D. Pa. 2010).

[17] *See New Jersey Land Area Based on 2010 U.S. Census Data*, https://www.indexmundi.com/facts/united-states/quick-facts/new-jersey/land-area#map and *New Jersey Counties by Population*, https://www.newjersey-demographics.com/counties_by_population (last visited May 18, 2020).

*Matusiewicz*, 2014 WL 2446064, at *2 (D. Del. May 29, 2014).  And, even if a noteworthy

percentage of this vicinage was exposed to media coverage of the case as Pugh and Schallus

suggest, this alone is legally insufficient to prove that they cannot receive a fair trial here.  *See id*. at

*4 (quoting *Skilling*, 561 U.S. at 381 ("Prominence does not necessarily produce prejudice and juror

impartiality."); *United States v. De Peri*, 778 F.2d 963, 972 (3d Cir. 1985) ("The mere fact that

community members are cognizant of the crimes and of the defendants' identities does not, by

itself, render the trial constitutionally unfair.")).

The second and third *Skilling* factors regarding coverage content and timing also do not

support transfer.  In support of his Motion on this point, Pugh attaches 371 pages of news articles

covering this and other health care cases in the District of New Jersey—an approach also

unsuccessfully taken by the defense in *Skilling*.  561 U.S. at 369 (noting Skilling's submission of

hundreds of news reports in support of his unsuccessful motion).  Pugh argues that the press

coverage is prejudicial because he was photographed in handcuffs on the day of his arrest and initial

appearance.  Such press is not unduly prejudicial and is insufficient to warrant a venue transfer.  *See*

*Savage*, 2012 WL 2376680 at *4-5 (noting that 129 articles and 46 television reports that included

quotes from wiretapped conversations and referred to defendant as a "drug kingpin," "pure evil,"

and "vicious, vindictive and hateful" were insufficient to merit transfer); *Matusiewicz*, 2014 WL

2446064 at *3 ("While the media coverage that the Defendants detail does indeed contain negative

information about [them], it is overwhelmingly factual in nature.").  Moreover, the majority of the

press cited by Pugh comes from one local Atlantic City news outlet.  It defies credulity that a small

news outlet in one county would preclude the selection of 12 impartial jurors out of a population of

over 1,823,000.  *Diehl-Armstrong*, 739 F. Supp. 2d at 800-01 (finding that local news outlet's

coverage of case was insufficient to warrant venue transfer).  Further, as is standard during jury

selection, the Court will instruct jurors not to independently research the case, thereby further protecting against any prejudice that could stem from the news reports.

The fourth *Skilling* factor addresses any media interference with court proceedings. No such interference has occurred. Although Pugh points to general press presence at court proceedings, the law is clear that media coverage at proceedings does not infringe upon due process. *See Matusiewicz*, 2014 WL 2446064 at *5.

Finally, southern New Jersey is where Pugh, his co-conspirators, and the trial witnesses reside, where the relevant conduct occurred, where the prosecution team and agents work, and where most defense counsel practice. It would be very burdensome and expensive for all these parties to travel daily to Newark for several weeks. Notably, having presided over this case since its inception, the indictment of a related case, and pleas of 23 co-conspirators, this Court is intimately familiar with this matter—which will encourage a speedy and efficient trial. To bring another court up to speed at this point would be a waste of already very limited time and resources. Thus, the Court should deny the motion to transfer venue to the Newark Vicinage.

## VI.    THE DEFENDANTS SHOULD BE ORDERED TO PRODUCE RECIPROCAL DISCOVERY AND PRIOR DEFENSE WITNESS STATEMENTS, INCLUDING ANY PRIVATE INVESTIGATOR REPORTS.

As set forth in Rule 16(b), upon complying with a request by a defendant for similar material, the Government may "[i]nspect and copy or photograph books, papers, documents, photographs, tangible objects . . . which are within the possession, custody, or control of the defendant and which the defendant intends to introduce as evidence in chief at trial." Fed. R. Crim. P. 16(b). Similarly, Rule 26.2 calls for the production of written or recorded statements of any witness a defendant intends to call to testify at trial.

The Government fulfilled its discovery obligations in this case and is entitled to reciprocal discovery. To date, the Government has only received very sparse discovery (two email

communications from Schallus).  The Government is aware that certain defendants hired private investigators, who interviewed potential witnesses and may have collected relevant information. The Government is entitled to this information, and the Court should direct the defendants to immediately produce reciprocal discovery and produce any written or recorded statements of potential witnesses they intend to call at trial at the time of *Jencks* disclosures.

## **CONCLUSION**

For the foregoing reasons, the Court should deny the defendants' pretrial motions in their entirety and grant the Government's motion for reciprocal discovery and witnesses' prior statements.

Respectfully submitted,

CRAIG CARPENITO
United States Attorney


By:   R. DAVID WALK, JR.
CHRISTINA O. HUD
Assistant United States Attorneys

Dated:  June 2, 2020

## CERTIFICATE OF SERVICE

The undersigned certifies that, on this day I caused to be served, via the Court's Electronic

Filing System ("ECF"), a copy of the Brief of the United States in Opposition to Defendants' Pretrial

Motions and In Support of Its Motion for Reciprocal Discovery on all defense counsel of record.


Respectfully submitted,

CRAIG CARPENITO
United States Attorney


_____
R. DAVID WALK, JR.
CHRISTINA O. HUD
Assistant U.S. Attorney
United States Attorney's Office
District of New Jersey

Date: June 2, 2020